IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KIMBERLY R. WRIGHT,

                              Plaintiff,              OPINION AND ORDER

        v.
                                                      08-cv-231-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is an action for judicial review of an adverse decision of the Commissioner of

Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Kimberly Wright seeks

reversal of the commissioner's determination that she was not disabled and therefore

ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified

at 42 U.S.C. §§ 416(i) and 423(d).  Plaintiff contends that the decision of the administrative

law judge who denied her claim is not supported by substantial evidence because he

erroneously rejected the opinions of her treating physicians, ignored evidence of her

depression, failed to consider her obesity as a contributing factor and made an improper

credibility determination.  I find that the administrative law judge properly considered the

medical opinions of record, plaintiff's mental and physical impairments and correctly

1

assessed her credibility.  For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on September 29, 1971.  AR 437.  She graduated from high school and has worked as a cook, tractor driver, forklift operator and laborer.  AR 138, 439.

Plaintiff applied for disability insurance benefits on February 2, 2005, alleging disability beginning January 1, 2000 because of diabetes, bad back, kidney failure, arthritis and depression.  AR 80, 90.  After the local disability agency denied her application initially and upon reconsideration, plaintiff requested a hearing, which was held on October 2, 2007 before Administrative Law Judge Peter Erickson in Eau Claire, Wisconsin.  The administrative law judge heard testimony from plaintiff, her husband, a neutral medical expert and a neutral vocational expert.  AR 435-62.  On October 25, 2007, the administrative law judge issued a decision, finding plaintiff not disabled through December 31, 2004, her last insured date.  AR 18-30.  This decision became the final decision of the commissioner on February 21, 2008, when the Appeals Council denied plaintiff's request for review.  AR 5-7.

2

B. Medical Evidence

1. Records prior to last insured date of December 31, 2004

In 2001, plaintiff was being treated by Dr. John Raduege for diabetes. AR 180. On October 1, 2001, plaintiff reported to Dr. Raduege that she had sudden onset of right leg pain. Dr. Raduege suspected right L5 nerve root impingement. AR 179. Although plaintiff reported some chronic back discomfort, she reported that she usually did not take medication for it. An October 5, 2001 computed tomography scan showed that plaintiff had borderline foraminal stenosis at the L3-4 level on the right side, moderate central spinal stenosis at the L4-5 level and borderline foraminal stenosis at the L4-5 level bilaterally. AR 198.

In April 2002, Dr. Raduege noted that plaintiff's diabetes mellitus was poorly controlled by diet alone and started her on Glucophage. His treatment notes indicate that plaintiff was tearful, overweight and had elevated blood sugars. AR 178.

On June 25, 2003, plaintiff reported to Dr. Raduege that she had been having pain in her left foot between her third and fourth toes. She reported that she had a little bit of numbness and that the third toe hurt when she walked on it. AR 174. Dr. Raduege increased plaintiff's Glucophage because her blood sugars were elevated. AR 172. On February 21, 2003, plaintiff saw Dr. Craig Johnson for a possible miscarriage. Plaintiff

3

weighed 237 pounds.  Dr. Johnson wrote that his exam revealed an obese female with abdominal pain.  AR 175.

On September 19, 2003, plaintiff saw Dr. Susan Roberts and complained of fairly severe depression because her daughter was going to have her fourth heart surgery in two weeks.  Dr. Roberts noted that plaintiff weighed 233 pounds and was quite tearful.  Dr. Roberts prescribed Wellbutrin for plaintiff's depression.  AR 171.  Plaintiff returned to see Dr. Roberts on November 24, 2003.  Dr. Roberts noted that plaintiff's diabetes was poorly controlled and observed that she was tearful and had a flat affect.  AR 168.

On December 8, 2003, plaintiff saw Dr. Margie H. Peterson because she was pregnant.  AR 167.  On December 10, 2003, plaintiff returned to Dr. Peterson and reported that she had miscarried.  Dr. Peterson continued plaintiff on Wellbutrin and Glucophage and started her on Lantus insulin.  AR 166.  On December 17, 2003, Dr. Peterson increased her Lantus insulin dosage.  AR 165.  On December 20, 2003 and January 7, 2004, Dr. Peterson again increased plaintiff's Lantus insulin dosage.  AR 164.

On January 21, 2004, plaintiff saw Dr. Peterson and complained of numbness in her left foot that had been present for many months, maybe up to a year.  Dr. Peterson noted that plaintiff's back examination revealed some mild tenderness over the vertebral processes. She indicated that plaintiff's straight leg raising was negative bilaterally.  She recommended a magnetic resonance imaging scan.  AR 163.  The scan showed moderate sized midline disc

protrusion at L4-5 indenting the ventral aspect of the thecal sac and abutting the L5 nerve root sheaths bilaterally.  The scan also showed moderate narrowing of the right L3-4 facet joint with thickening of the ligamentum flavum and hypertrophy spurring with moderate to severe narrowing of the right foramen, which could impinge on the right L3 nerve root ganglion.  AR 195.

On February 10, 2004, plaintiff saw Dr. Bruce Bartie for evaluation of her leg and low back pain.  Upon examination, he noted that plaintiff had a slightly guarded stance and that her gait was mildly antalgic to the left side.  He indicated that she had full strength in both lower extremities.  Plaintiff weighed 234 pounds.  Dr. Bartie concluded that plaintiff suffered from Type II diabetes (which was not well-controlled), gross obesity, degenerative disc disease at L4-5 with mild bulging of the disc and facet joint arthropathy of the L3-4 and L4-5 discs, with mild foraminal narrowing.  Dr. Bartie told plaintiff that she was not a surgical candidate.  He encouraged her to quit smoking and start a weight loss program.  He recommended an epidural steroid injection and outpatient physical therapy.  AR 349-50.

On March 3, 2004, Dr. Peterson started plaintiff on Humalog insulin and prescribed Vioxx. AR 162.  On June 30, 2004, Dr. Peterson saw plaintiff for a recheck of her diabetes.  Plaintiff reported hitting her left knee on a trailer hitch.  An x-ray of her left knee was totally unremarkable.  Dr. Peterson started plaintiff on Lisinopril because of elevated blood pressure.  She also increased plaintiff's Lantus insulin dosage.  Dr. Peterson stressed to

plaintiff the importance of regular exercise, watching her diet and taking time for herself. AR 158.

On September 1, 2004, plaintiff saw Dr. Peterson and reported that she was feeling much better. Her blood sugars were consistently in the 150 to 160 range and her blood pressure readings were excellent. AR 248.

2. <u>Records after last insured date</u>

In June 2005, plaintiff saw counselor Barbara K. Herbert at the Northwest Counseling and Guidance Clinic for depression, anxiety and flashbacks. Herbert wrote on June 8, 2005 that plaintiff was "scared to death" that her old boyfriend, who had committed murder, was going to be released from prison and kill her. Plaintiff also discussed the stress she experienced as a result of her daughter's heart surgeries. AR 261. On June 22, 2005, Herbert wrote: "Client is unable to work due to emotional/physical problems and daughter's health. Is maintaining home and parenting responsibilities." AR 260.

In April 2006, plaintiff began counseling sessions with Debra Severson at Families First Counseling Center for post traumatic stress disorder. The intake assessment indicated that plaintiff's disorder stemmed from a multiple murder committed by Bruce Benzinger in Polk County. At that time, plaintiff was 17 years old and had been dating Benzinger's step-

brother.  Benzinger allegedly had put his victims' body parts in plaintiff's duffel bag.  AR 319-21.

On May 31, 2006, Severson completed a medical opinion regarding plaintiff's mental ability to do work-related activities.  She noted that her report was based on her intake assessment and concluded that plaintiff had a fair to poor ability to perform most mental work related activities because of poor concentration and decreased awareness of her surroundings.  She also concluded that plaintiff would be absent from work more than three times a month.  AR 257-58.

In May 2006, Dr. Christian DuBois performed back surgery on plaintiff.  The surgery included a decompression of the right L5 nerve root and a microdiscetomy at the L4-5 level.  AR 329-36.  On June 23, 2006, Steve Karo, PAC, stated a medical opinion concerning plaintiff's ability to do physical activities.  He indicated that plaintiff could lift 20 pounds occasionally and frequently, could sit six hours in an eight-hour work day, had no limit on standing and walking and needed to change positions every hour.  He also indicated that plaintiff would have to lie down once or twice a day.  AR 351-54.

C.  Consulting Physicians

On September 1, 2004, state agency physician M. J. Baumblatt completed a physical residual functional capacity assessment for plaintiff.  He listed plaintiff's diagnoses as

degenerative disc disease, degenerative joint disease and diabetes mellitus.  He found that plaintiff could lift 10 pounds occasionally and less than10 pounds frequently, stand or walk two hours in an eight-hour work day and sit six hours in an eight-hour work day.  In the section of the form asking for evidence supporting the conclusions, Dr. Baumblatt wrote "see EWS," referring presumably to the electronic case development sheet used by the disability adjudication team.  AR 139, 234-39.

On October 6, 2005, state agency physician Robert Callear completed a physical residual functional capacity assessment for plaintiff.  He listed plaintiff's diagnoses as diabetes and moderate disc protrusion at L5.  He found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently and sit, stand or walk six hours in an eight-hour work day.  AR 267-74.

On February 6, 2006, state agency physician Zhen Lu completed a physical residual functional capacity assessment for plaintiff.  He listed plaintiff's diagnoses as diabetes and spinal disc disorder.  He found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently and sit, stand or walk six hours in an eight-hour work day.  AR 293-300.  In the conclusion section, Lu noted that plaintiff had poorly controlled diabetes but no significant complications.  He also noted that she was able to walk and stand normally and could perform light work activity.  AR 294.

On August 31, 2004, a state agency psychologist completed a Psychiatric Review Technique Form for plaintiff and found she had an affective disorder. AR 219-33. He found that plaintiff had no difficulties in the activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. He further found that plaintiff had no episodes of decompensation and no evidence of the "C' criteria. AR 229-30.

On June 30, 2005, Travis Hinze, Ph.D., performed a mental status evaluation of plaintiff at the request of the Social Security Disability Determination Bureau. He reported that plaintiff's depression began when she was 19 or 20 years old and was ongoing. He noted that she was cooperative throughout the evaluation and that there was no obvious evidence of malingering. Plaintiff reported having decreased sleep, decreased concentration, the inability to experience joy, social withdrawal, low energy, thoughts of worthlessness and crying spells. Dr. Hinze concluded that plaintiff was severely depressed and suffering from severe post traumatic stress disorder. AR 262-66. He stated that he did "not believe that she could withstand the stress and rigor of a full-time work position at this point in time." AR 266.

On October 10, 2005, state agency psychologist Keith Bauer completed a psychiatric review technique form for plaintiff and found that she had an affective disorder and an anxiety disorder. AR 279-92. He concluded that plaintiff had moderate difficulties in the activities of daily living, maintaining social functioning and maintaining concentration,

persistence or pace.  He found that plaintiff had no episodes of decompensation and no evidence of the "C" criteria.  AR 289-90.

Bauer also completed a mental residual functional capacity assessment for plaintiff. He found that she was moderately limited in the following areas:  understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; completing a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to respond appropriately to changes in the work setting.  AR 275-76.

On February 10, 2006, state agency psychologist William Merrick completed a psychiatric review technique form for plaintiff and found that she had an affective disorder. AR 301-14.  He found that plaintiff had mild difficulties in the activities of daily living and maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.  He further found that plaintiff had no episodes of decompensation and no evidence of the "C" criteria.  AR 311-12.

Merrick also completed a mental residual functional capacity assessment for plaintiff. He found that she was moderately limited in the following areas:  understanding,

10

remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal work day and work week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and the ability to set realistic goals or make plans independently of others. AR 315-16. In the conclusion section, Merrick stated that plaintiff had depression but that she was able to care for herself, her household and her daughter. He concluded that she was capable of interacting appropriately and performing routine, unskilled work. AR 317.

### D. Hearing Testimony

At the hearing, plaintiff was represented by Dennis Teachout, a non-attorney representative. Plaintiff testified that she lives with her husband and seven-year old daughter in Cushing, Wisconsin. AR 437-38. She testified that she currently weighs 203 pounds but that from 1990 to 2004, she weighed 60 pounds more. AR 439. She quit drinking in 2000. AR 443.

Plaintiff testified that in 1999, she worked in a plastics factory as an injector machine mold operator. AR 444. She also testified that she worked as forklift operator and as a cook. AR 445-46. Plaintiff testified that she had been unable to work since 2000 because of back pain and numbness in her legs. She also stated that she did not work in 2000

because was pregnant with her daughter, whom they knew from an ultrasound would be born with heart problems.  Her daughter has had four open heart surgeries.  Plaintiff testified that she "pretty much" had "to be there all the time to do everything" for her daughter.  She also testified that before December 2004, she was able to do housework, cook, wash clothes and go grocery shopping.  Her husband helped with mowing the lawn, doing laundry and washing dishes.  AR 440-41, 447, 552-53.

Plaintiff testified that her main issue between 2002 and 2004 was back pain, numbness in her legs and tingling in her toes.  She stated that her back pain was treated conservatively until she had surgery in 2006.  AR 442.  To alleviate her pain, plaintiff would lie down, do stretching exercises and use ice or heat for half an hour several times a day.  AR 453.  Plaintiff also testified that she suffered from depression, but that it was not severe until 2005.  Plaintiff stated that she had sought counseling in 2004 and then in 2005 because she thought that someone she knew was going to be released from prison and try to kill her.  AR 448.  Plaintiff explained that she could sit for about an hour at a time, stand for 15 minutes at a time and walk two blocks.  AR 447, 450.

Plaintiff's husband testified that during the relevant time period, plaintiff was not able to keep a permanent job for various reasons.  He testified that they had both quit drinking when she became pregnant.  He also testified that plaintiff had experienced nightmares since 1999.  AR 454.

The administrative law judge called Dr. Robert Mulhausen to testify as a neutral medical expert. He testified that plaintiff suffered from obesity, poorly-controlled diabetes mellitus with no evidence of secondary organ problems, hypertension, hyperlipidemia, tobacco use, post traumatic stress disorder and back pain. He noted that in October 2001, plaintiff had a sudden onset of right lower extremity pain and was diagnosed with borderline foraminal stenosis at L3 and L4 on the right side, moderate central stenosis at L4 and L5 and bilateral borderline stenosis at L4 and L5 bilaterally. Dr. Mulhausen indicated that plaintiff had no follow-up for these symptoms, but that in January 2004, she had an episode of numbness on the top of her left foot. At that time, there was moderate mid-line disc protrusion at L4 and L5. Although a magnetic resonance imaging scan and a computed tomography scan showed degenerative disc disease and degenerative joint disease, plaintiff did not follow up on these results until March 2006, when she had back surgery. AR 455-57. Dr. Mulhausen concluded that plaintiff did not have an impairment that met or equaled a listing because he was "unable to show a one-year type of follow-up for either of those two episodes," and that plaintiff was limited to performing sedentary work. AR 457.

The administrative law judge called Kenneth Ogren to testify as a neutral vocational expert. AR 458. He advised Ogren that he had found plaintiff had diabetes, back pain secondary to degenerative disc disease and degenerative joint disease, depression, obesity and hypertension. He asked Ogren whether an individual of plaintiff's age, educational

13

background, work experience and the residual function capacity to perform simple, routine, sedentary work with a sit or stand option every hour would be able to perform plaintiff's past work. Ogren responded that such an individual would not be able to perform plaintiff's past work, but he testified that the individual would be able to perform jobs as inspector (1,200 jobs in Wisconsin), polisher (3,000 jobs in Wisconsin) and assembler (1,000 jobs in Wisconsin). AR 461-62. Ogren testified that the listings for these positions in the Dictionary of Occupational Titles did not include the sit or stand option. However, he stated that based on his personal knowledge, these jobs could be performed by an individual with the restrictions assessed by the administrative law judge. The administrative law judge asked Ogren whether an individual could perform competitive employment if she could not go to work or had to leave early one day a week. He responded no. AR 462.

### E.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. See 20 C.F.R. § 404.1520. At step one, he found that plaintiff had not engaged in substantial gainful activity from her alleged onset date of January 1, 2000 through December 31, 2004, her last insured date. At step two, he found that plaintiff had severe impairments of back pain secondary to degenerative disc

14

disease and degenerative joint disease, depression (including post traumatic stress disorder), obesity, diabetes mellitus and hypertension.  AR 20.

Relying on the testimony of the medical expert, Dr. Mulhausen, the administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  In support of his opinion, Dr. Mulhausen testified that there was no evidence of a one-year episode of back pain or any follow up of the two documented clinic visits related to back pain.  The administrative law judge gave great weight to Dr. Mulhausen's opinion because Mulhausen specializes in assessing disability for the Social Security Administration and had the opportunity to review the longitudinal evidence of record.  AR 21.

The administrative law judge also determined that plaintiff's medically determinable mental impairments did not meet or equal a listed impairment.  He first addressed the "B" criteria of the listings regarding plaintiff's depression.  Citing plaintiff's testimony that she was able to care for herself, her home and her young daughter who had cardiac problems, the administrative law judge found that plaintiff had a mild restriction in the activities of daily living.  He noted that even though plaintiff could have difficulties in the area of social functioning when she faced stressful situations, overall, she exhibited only mild difficulties in this area.  In support, he noted that she visits with her friend, goes to her daughter's

15

sporting events, attends church and has not reported difficulties relating to co-workers or supervisors. Given plaintiff's reported sleep disturbances resulting from nightmares and back pain, depression and post traumatic stress disorder, the administrative law judge concluded that she had moderate difficulty in maintaining concentration, persistence or pace. Finally, he found that plaintiff had not experienced any episodes of decompensation and there was no evidence that established the presence of the "C" criteria of the listings. AR 22.

At step four, the administrative law judge determined that plaintiff had the residual functional capacity to perform sedentary work limited by an hourly sit or stand option and the performance of simple, unskilled tasks. AR 22. In determining plaintiff's physical residual functional capacity, the administrative law judge placed great weight on the testimony of Dr. Mulhausen and the residual functional capacity assessment completed by state agency physician Baumblatt. The administrative law judge gave little weight to the opinions of state agency physicians Callear and Lu, who found that plaintiff could perform light work, because they were not accompanied by any substantive explanation or supported by other substantial evidence in the record. He also gave little weight to the June 2006 opinion of Steve Karo because it did not address plaintiff's residual functional capacity before her last insured date. AR 26-27.

In determining plaintiff's mental residual functional capacity, the administrative law judge considered the opinions of the state agency psychologists. He gave little weight to the

16

August 2004 opinion that plaintiff had no restrictions in any area of mental functioning because more recent evidence had been submitted. Noting that plaintiff's sleep disturbances could cause plaintiff difficulties in maintaining concentration, persistence or pace, the administrative law judge accepted Bauer's opinion that plaintiff had moderate difficulties in this area. However, he did not adopt Bauer's opinion that plaintiff had moderate difficulties in daily living and social functioning because Bauer did not explain his reasoning and his findings were inconsistent with the evidence of record. The administrative law judge gave significant weight to Dr. Merrick's opinion that plaintiff had mild difficulties in the activities of daily living and social functioning but moderate difficulties in maintaining concentration because Merrick supported his opinion with substantive evidence and it was consistent with the medical record as a whole on or before plaintiff's last insured date. AR 26.

The administrative law judge gave little weight to the medical opinions that postdated plaintiff's last insured date of December 31, 2004. He noted that although Hinze referred to events that occurred in the relevant period, he did not address plaintiff's ability to work before her last insured date. The administrative law judge pointed out that Hinze specifically stated that he did not believe that plaintiff "could withstand the stress and rigor of a full-time work position *at this point in time*." AR 27 (emphasis added by adjudicator). Similarly, he noted that Severson's May 2006 opinion referred to plaintiff's residual functional capacity as of the date the report was completed. Id.

17

The administrative law judge found plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible.  AR 24.  In making this determination, the administrative law judge noted that the medical evidence and plaintiff's course of treatment did not call for limitations greater than those that he assessed. He noted that although plaintiff claimed that her back pain prevented her from working since January 1, 2000, she testified that she also was unable to work because an ultrasound performed during her pregnancy showed that her child was going to be born with significant cardiac issues.  Plaintiff's daughter was born in July 2000 and after that time, plaintiff was her primary caregiver.  AR 24.

The administrative law judge further noted that although plaintiff visited the clinic a number of times during the relevant period, "the predominant reasons [for her visits were] miscarriages, vaginal herpes and a large number of respiratory type infections."  AR 24.  He pointed out that only two visits, one in October 2001 and one in January 2004, related to back pain.  In October 2001, plaintiff reported right leg pain and some back discomfort for which she did not usually need medication.  Although a computed tomography scan was performed, plaintiff never returned to get the results or for follow up care.   The administrative law judge pointed out that more than two years later, in January 2004, plaintiff complained of numbness in her left foot during a followup visit for her diabetes. Dr. Peterson reported that plaintiff had not been complaining of back pain but ordered a

18

magnetic resonance imaging study.  After reviewing the imaging study results, Dr. Bartie recommended that plaintiff lose weight, control her diabetes and quit smoking.  However, the administrative law judge noted that there was no indication in the record that plaintiff returned to Dr. Bartie at any time during 2004.  He pointed out that plaintiff did not have "specific involvement" until March 2006, when there were significant neurological findings and eventual back surgery.  AR 24-25.

The administrative law judge considered the medical record concerning plaintiff's fatigue and found that it related primarily to poor control over her diabetes.  He noted that by September 2004, plaintiff was feeling much better and her blood sugars were under better control.  The administrative law judge also found that there were no records prior to 2004 to support plaintiff's claims that she had kidney failure or arthritis.  AR 25.

With respect to plaintiff's mental impairments, the administrative law judge noted that she was not diagnosed with post traumatic stress disorder until July 2005, seven months after her last insured date.  He noted that prior to her last insured date, there was only one mention of depression in the treatment records.  September 2003 clinic notes stated that plaintiff had "fairly severe depression," was "really stressed out," crying, tearful and not sleeping well.  However, the administrative law judge noted that at this time, plaintiff's three-year old daughter was two weeks away from having her fourth surgery.  Plaintiff was prescribed enough Wellbutrin to last until her daughter's surgery was completed.  The

19

administrative law judge concluded that apart from this incident in 2003, plaintiff did not see a mental health professional or take medication for her depression prior to July 2005. AR 25-26.

In addition to the objective medical evidence, the administrative law judge considered other relevant factors in assessing plaintiff's credibility. He discounted the testimony of plaintiff's husband about her nightmares and sleep deprivation because her husband was an interested party and because plaintiff had not reported having nightmares to any medical professional or received medication for sleep issues prior to her last insured date. The administrative law judge did note that he accommodated any problems that plaintiff may have with concentration, persistence or pace caused by sleep disturbances by limiting her to unskilled work. AR 27.

The administrative law judge considered plaintiff's reported side effect of lightheadedness from Lisinopril and concluded that his residual functional capacity assessment would accommodate any limitations caused by her lightheadedness. He found that plaintiff's daily activities of reading, cooking, cleaning house, doing laundry, shopping, going up and down stairs and caring for her daughter; weekly activities of going to the doctor and doing yard work; and occasional activities of fixing things and going out with friends were consistent with sedentary work with an hourly sit or stand option. AR 27-28. Finally, the administrative law judge considered plaintiff's stable work history with low earnings. He

20

noted that there was no indication that plaintiff sought vocational assistance to obtain a job within her residual functional capacity.  AR 28.

Relying on the testimony of the vocational expert, the administrative law judge found at step four that plaintiff was not able to perform her past work.  However, at step five, he adopted the expert's opinion that there were jobs existing in Wisconsin that plaintiff could perform, namely inspector (1,200 jobs in Wisconsin), polisher (3,000 jobs in Wisconsin) and assembler (1,000 jobs in Wisconsin).  The administrative law judge acknowledged that:

> the residual functional capacity requirement for the jobs cited are not consistent with the job descriptions in Dictionary of Occupational Titles.   The undersigned inquired of the vocational expert whether, based on his personal knowledge of the jobs, could they be performed within the restrictions contained in the residual functional capacity.  The vocational expert responded in the affirmative.

AR 28-29.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

21

Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## B.  Treating Physicians' Opinions

Plaintiff generally argues that the administrative law judge failed to give the opinions of her treating physicians controlling weight and improperly relied on the medical expert's opinion.  As respondent points out, plaintiff fails to identify which treating physicians she is referring to or what specific evidence the administrative law judge failed to consider.

22

Plaintiff merely states that "[t]he ALJ erroneously placed excessive weight on the opinion of Dr. Mulhausen and failed to properly grant controlling weight to Plaintiff's treating physicians, whose opinions and diagnosis are supported by substantial evidence in the record." Dkt. #5 at 4.  She then cites several pages of the record that mention her depression.  Because plaintiff has failed to develop this argument adequately, it is waived. Kramer v. Banc of America Securities, LLC, 355 F.3d 961, 964 n.1 (7th Cir. 2004) (perfunctory and undeveloped arguments are waived).

In any event, the only favorable opinions regarding plaintiff's limitations were from Hinze in June 2005 and Severson and Karo in May 2006.  Hinze performed a consultive examination of plaintiff and determined that she could withstand the stress and rigor of a full-time work position at that point in time.  Relying on an intake assessment of plaintiff, Severson reported that plaintiff had a fair to poor ability to perform most mental work related activities because of poor concentration and decreased awareness of her surroundings. She also concluded that plaintiff would be absent from work more than three times a month. After plaintiff's back surgery, Karo indicated that plaintiff could lift 20 pounds occasionally and frequently, could sit six hours in an eight-hour work day, had no limit on standing and walking and needed to change position every hour.  He also indicated that she would have to lie down once or twice a day.

Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions and must evaluate them in the context of the expert's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005); 20 C.F.R. §§ 404.1527(d) and (e), 416. 927(d) and (e).  An administrative law judge can reject a physician's opinion if his reasons for doing so are supported by substantial evidence in the record.  Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003).  When the record contains well supported contradictory evidence, even a treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Opinions from physicians "who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources."  Social Security Ruling 96-6p, 1996 WL 374180, *2 (1996).

In this case, the record does not support a finding that the opinions of Hinze, Severson or Karo were entitled to controlling weight.  Hinze performed a one-time consultive examination, Severson saw plaintiff twice and it is not clear whether Karo ever examined her.  See 20 C.F.R. § 404.1527(d)(2)(i) and (ii) (length of treatment relationship, frequency of examination and nature and extent of treatment relationship relevant factors in determining

24

whether medical opinion given controlling weight).  Further, the administrative law judge properly considered these providers' opinions and rejected them for good reasons.  Because the opinions postdated plaintiff's last insured date and assessed limitations for plaintiff as of June 2005 and May 2006, they were not relevant to the period at issue.  20 C.F.R. §§ 404.315(a)(1), 404.320(b)(2); Sienkiewicz v. Barnhart, 409 F.3d 798, 802 (7th Cir. 2005) (claimant must establish that she disabled prior to expiration of insured status to receive benefits).

## C.  Mental Impairments

Plaintiff generally contends that the administrative law judge erred in "discrediting" evidence of her depression and post traumatic stress disorder prior to July 2005.  Dkt. #5 at 4.  Although the administrative law judge found that plaintiff was severely impaired by depression (including post traumatic stress disorder) during her insured period, he found that the impairment did not meet or equal a listed impairment or limit her ability to perform sedentary work other than requiring her to perform only simple, unskilled tasks.  In making these findings, he reviewed the evidence of plaintiff's depression prior to July 2005. Specifically, he noted that September 2003 clinic notes stated that plaintiff had "fairly severe depression," was "really stressed out," crying, tearful and not sleeping well.  However, the administrative law judge noted that at this time, plaintiff's three-year old daughter was two

weeks away from having her fourth surgery.  Plaintiff was prescribed enough Wellbutrin to last until her daughter's surgery was completed.  The administrative law judge concluded that apart from this incident in 2003, plaintiff did not see a mental health professional or take medication for her depression prior to July 2005.  He further noted that plaintiff was not diagnosed with post traumatic stress disorder until July 2005, seven months after her last insured date.  These findings are well founded.

After determining that plaintiff had a mental impairment, the administrative law judge rated the degree to which the impairment limited her ability to function, as required under the special technique set forth in 20 C.F.R. § 404.1520a(b) and (c).  He concluded that plaintiff had mild restrictions of the activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence or pace.  However, he found that after considering the "B" criteria" and lack of evidence of the "C" criteria that plaintiff's mental impairments did not meet or equal a listed impairment.  The administrative law judge then determined that plaintiff was capable of simple, unskilled sedentary work.

Plaintiff did not raise specific challenges to the adjudicator's findings.  Instead, she asserts that the administrative law judge should have considered "corroborating evidence" of her mental impairment from prior to December 31, 2004 "to determine if indeed Plaintiff suffered from depression and PTSD prior to December 31, 2004."  Dkt. #5 at 7 (citing Allord v. Barnhart, 455 F.3d 818, 822 (7th Cir. 2006) (retrospective diagnosis of

26

impairment, corroborated by contemporaneous lay evidence, can support finding of past impairment)).  Plaintiff refers cursorily evidence of her depression diagnoses, routine fatigue, diabetes, genital herpes, childhood trauma, sick daughter, persistent back problems, alcoholism, drug and tobacco use and numerous miscarriages prior to December 31, 2004. I agree that the conditions cited by plaintiff support a finding that she suffered from depression prior to December 31, 2004.  The administrative law judge also reached this conclusion because he listed depression (including post traumatic stress disorder) as one of plaintiff's severe impairments.

What plaintiff has not established and what the record does not show is that her mental impairments met or equaled a listed impairment or that they significantly limited her ability to function during the period relevant to the administrative law judge's decision. Without more, earlier references to plaintiff's depression by other treatment providers do not make the later limitations assessed by Hinze, Severson and Karo relevant to the insured period.  The administrative law judge appropriately considered all of the conditions and symptoms mentioned by plaintiff and reasonably determined that before December 31, 2004, she was capable of simple, unskilled, sedentary work.

Plaintiff also argues that if the administrative law judge found that the evidence of record failed to support her claims of depression and post traumatic stress disorder, he should have ordered further tests to supplement the record.  However, an administrative law

judge does not need to recontact a medical source or call a medical expert unless he is unable to determine whether the claimant is disabled.  20 C.F.R. § 404.1512(e) (administrative law judge will recontact medical source when evidence is inadequate to determine disability); 20 C.F.R. § 404.1519a(b) (administrative law judge may order consultative examination "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim"); 20 C.F.R. § 404.1527(f)(2)(iii) (administrative law judge may ask for opinion from medical expert on nature and severity of impairment and on whether impairment equals listed impairment).  Here, the administrative law judge had the benefit of the opinions of three state agency psychologists, the consultative report of Hinze and the testimony of a medical expert.  The evidence of record adequately supported a finding of not disabled, and the administrative law judge acted within his discretion in deciding not to seek further medical information in making his step three and four findings.  Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994) (court "generally respects the ALJ's reasoned judgment" regarding how much evidence needed to make finding about disability).

C.  Obesity

Plaintiff contends that the administrative law judge failed to properly evaluate the evidence in the record that she was obese, as required by Social Security Ruling 02-1p: Policy Interpretation Ruling Titles II and XVI:  Evaluation of Obesity, 67 Fed. Reg. 57859

28

(2002).  SSRs are interpretive rules intended to offer guidance to agency adjudicators.  <u>Lauer v. Bowen</u>, 818 F.2d 636, 639-40 (7th Cir. 1987).  "While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs 'binding on all components of the Social Security Administration.'"  <u>Lauer v. Apfel</u>, 169 F.3d 489, 492 (7th Cir. 1999) (citing 20 C.F.R. § 402.35(b)(1)).

There is no dispute that plaintiff is obese.  SSR 02-1p explains that although the commissioner has deleted the listing for obesity, it is still a medically determinable impairment that can cause or contribute to impairments in other body systems, such as the musculoskeletal, respiratory and cardiovascular systems.  <u>Id.</u>  The commissioner is to consider obesity at several points in the five-step sequential evaluation process, including when deciding whether a claimant meets or medically equals a listed impairment, and when assessing a claimant's residual functional capacity.  <u>Id.</u>  Plaintiff contends that the administrative law judge's failure to do this in her case is an error meriting remand.  <u>Clifford v. Apfel</u>, 227  F.3d 863, 873 (7th Cir. 2000) (administrative law judge should have considered effect of plaintiff's weight on her overall condition where record contained numerous references to plaintiff's weight problem but claimant did not claim obesity as impairment on her Disability Report).

Although the administrative law judge noted plaintiff's weight and obesity in his decision, SSR 02-1p requires more than acknowledgment of a claimant's obesity.  The

administrative law judge is supposed to *evaluate* the effects of a claimant's obesity at the various steps in the sequential process.  Plaintiff is correct that nowhere in his decision does the administrative law judge cite SSR 02-1p, consider plaintiff's obesity as an aggravating condition or give any other indication that he complied with the regulation.

Nonetheless, the Court of Appeals for the Seventh Circuit has held that "a failure to explicitly consider the effects of obesity may be harmless error." Prochaska v. Barnhart, 454 F. 3d 731, 736 (7th Cir. 2006).  In Prochaska, the court found that because the administrative law judge's decision was predicated upon the opinions of physicians who discussed the plaintiff's weight, and because plaintiff had not pointed to any evidence suggesting that her obesity significantly aggravated her physical impairments or contributed to her physical limitations, the administrative law judge's failure to comply with SSR 02-1p was harmless.  Id.  The court reached the same conclusion in Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004), explaining:

> [A]ny remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case.  See Keys v. Barnhart, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error review to ALJ's determination).  Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk.  Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity.  Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctor's opinions.

30

As in <u>Skarbek</u> and <u>Prochaska</u>, the administrative law judge's failure in this case explicitly to consider plaintiff's obesity at the various steps of the sequential evaluation process is harmless error.  It is clear from the decision and the hearing transcript that he was aware of plaintiff's obesity.  AR 20 (finding obesity as severe impairment), AR 25 (noting that Dr. Bartie recommended weight loss program as treatment for back pain) and AR 439 (questioning plaintiff about her weight).  Although plaintiff contends that the administrative law judge should have considered whether her obesity combined with her other conditions was severe enough to meet or equal a listed impairment, she does not indicate what listing she thinks she satisfies, or point to any medical evidence in the record that would support a finding that the combination of her impairments is of listing-level severity.  Similarly, plaintiff fails to point to evidence supporting her assertion that her obesity affected her daily social functioning.  I also find no evidence in the record suggesting that plaintiff's obesity limited her social functioning or any other ability.

None of plaintiff's physicians or the medical consultants or the medical expert who reviewed the record, and presumably were aware of plaintiff's obesity, determined that her impairments, either individually or in combination, met or equaled the listings.  Absent medical evidence to the contrary, the administrative law judge's failure to address plaintiff's obesity at step three of the sequential evaluation process was harmless.  <u>Scheck v. Barnhart</u>, 357 F.3d 697, 800 (7th Cir. 2004) (Disability Determination and Transmittal forms

31

conclusively establish that physician designated by commissioner has considered whether plaintiff's impairment met or equaled listing; administrative law judge's failure specifically to articulate reason for accepting opinions of consulting physicians not error where plaintiff did not present any substantial evidence to contradict agency's position on medical equivalency).

Similarly, although plaintiff argues that the administrative law judge should have considered the impact of her obesity on her residual functional capacity, she does not point to any evidence in the record apart from her weight to suggest that she would be unable to perform sedentary work with the restrictions set forth by the administrative law judge.  SSR 02-1p, 67 Fed. Reg. at 57862 ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments.").   Moreover, the administrative law judge did consider plaintiff's obesity indirectly by relying on the opinions of Dr. Mulhausen and the state agency physicians, who were aware of her obesity from their review of her medical record.  Dr. Mulhausen testified that plaintiff was obese and Dr. Baumblatt indicated that he relied on the electronic case development worksheet, which specifically referred to plaintiff's obesity.  AR 139-40, 455.  In relying on these reports in assessing plaintiff's residual functional capacity, the administrative law judge accounted indirectly for plaintiff's obesity.  Therefore, it would be pointless to remand this case for

explicit consideration of plaintiff's obesity.  Gentle v. Barnhart, 430 F.3d 865, 868 (7th Cir.

2005) ("[O]nce [obesity's] causal efficacy is determined, it drops out of the picture.").


### D.  Credibility

Plaintiff challenges the administrative law judge's determination that her statements

concerning the intensity, persistence and limiting effects of her symptoms were not entirely

credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a

two-step process in evaluating an individual's own description of his or her impairments:  1)

determine whether an "underlying medically determinable physical or mental impairment"

could reasonably be expected to produce the individual's pain or other symptoms; and 2) if

such a determination is made, evaluate the "intensity, persistence, and limiting effects of the

individual's symptoms to determine the extent to which the symptoms limit the individual's

ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1

(1996); see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).  When conducting

this evaluation, the administrative law judge may not reject the claimant's statements

regarding her symptoms on the sole ground that the statements are not substantiated by

objective medical evidence.  Instead, the administrative law judge must consider the entire

case record to determine whether the individual's statements are credible.  Relevant factors

the administrative law judge must evaluate are the individual's daily activities; the location,

33

duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck , 390 F. 3d at 505.

34

In making his credibility determination, the administrative law judge considered the medical evidence and determined that plaintiff's course of treatment did not call for limitations greater than those that he assessed. He determined that plaintiff's fatigue related primarily to poor control over her diabetes and that by September 2004, she was feeling much better and her blood sugars were under better control. With respect to her back pain, the administrative law judge cited her testimony that she stopped work in 2000 in part because an ultrasound performed during her pregnancy showed that her child was going to be born with significant cardiac problems. Plaintiff also has had to provide extensive care for her daughter who has undergone four major surgeries since July 2000.

The administrative law judge further noted that although plaintiff visited the clinic a number of times during the relevant period, "the predominant reasons [for her visits were] miscarriages, vaginal herpes and a large number of respiratory type infections." Plaintiff takes issue with this statement, stating that the adjudicator seems to hold her these unrelated conditions against her. However, as the administrative law judge pointed, only two of plaintiff's doctor's visits related to back pain and neither resulted in significant treatment or evidenced serious limitations in plaintiff's physical abilities. In October 2001, plaintiff reported right leg pain and some back discomfort for which she did not usually need medication. At the January 2004 visit, Dr. Peterson reported that plaintiff had not been

35

complaining of back pain.  Plaintiff did not have any further treatment or diagnoses related to her back until two years later when she had back surgery.

With respect to plaintiff's mental impairments, the administrative law judge noted that before her last insured date, there was little mention of depression in the treatment records.  September 2003 clinic notes stated that plaintiff had fairly severe depression. However, at that time, plaintiff's three-year old daughter was two weeks away from having her fourth surgery.  Plaintiff was prescribed enough Wellbutrin to last until her daughter's surgery was completed.  Apart from this incident in 2003, plaintiff did not see a mental health professional or take medication for her depression prior to July 2005.  In fact, plaintiff admitted in her testimony that her depression was not severe until 2005.

In addition to the objective medical evidence, the administrative law judge properly considered other relevant factors in assessing plaintiff's credibility.  He discounted the testimony of plaintiff's husband about her nightmares and sleep deprivation because her husband was an interested party and because plaintiff had not reported having nightmares to any medical professional or received medication for sleep issues prior to her last insured date.  In any event, the administrative law judge accommodated any problems that plaintiff may have had with concentration, persistence or pace caused by sleep disturbances by limiting her to unskilled work.  The administrative law judge also considered plaintiff's stable

work history with low earnings.  He noted that there was no indication that plaintiff sought vocational assistance to obtain a job within her residual functional capacity.

Plaintiff asserts that the administrative law judge erred in not considering the amount of medications that she was on.   However, plaintiff's only reported side effect was lightheadedness from Lisinopril.  The administrative law judge reasonably concluded that his residual functional capacity assessment would accommodate any limitations caused by that symptom.

Plaintiff also criticizes the administrative law judge for finding that her minimal daily activities showed her capable of working eight hours a day, seven days a week.  See Zurawski, 245 F.3d at 887 (ability to perform a daily routine and sporadic diversions does not refute a claim of disability); Clifford, 227 F.3d at 872 (same).  She contends that all of these activities are contingent on her not having to sit or stand for more than an hour at a time. In his decision, the administrative law judge cited plaintiff's daily activities of reading, cooking, cleaning house, doing laundry, shopping, going up and down stairs and caring for her daughter; weekly activities of going to the doctor and doing yard work; and occasional activities of fixing things and going out with friends.  He determined that her ability to engage in these activities was consistent with sedentary work as long as she could sit or stand every hour.  Although some of plaintiff's activities could be considered merely part of a daily routine, plaintiff testified that after each of her daughter's four open heart surgeries, she had

37

to do almost everything for her daughter.  It is reasonable to assume that the care that plaintiff had to provide for her daughter went well beyond routine or minimal and was consistent with an ability to perform a limited range of sedentary work.  In any event, plaintiff's daily activities are just one of several factors that the administrative law judge considered.  Given all the evidence of record, I cannot find that the administrative law judge's credibility determination was patently wrong.

In sum, the administrative law judge built an accurate and logical bridge between the evidence and his conclusion that plaintiff was not entirely credible and gave specific reasons for his determination that are supported by the record.  Therefore, plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.

E. Step Five

In her reply brief, plaintiff argues for the first time that the vocational expert's "boilerplate reassurances" were insufficient to explain why she would be able to perform the jobs that he identified.  Because plaintiff failed to develop this argument or give the commissioner an opportunity to respond to it, it is waived.  Kochert v. Adagen Medical International, Inc., 491 F.3d 674, 679 (7th Cir. 2007).  In any event, I am not persuaded by plaintiff's argument.

38

Plaintiff correctly points out that her residual functional capacities assessment was inconsistent with the descriptions of those jobs in the Dictionary of Occupational Titles. Specifically, it appears from the hearing transcript that the administrative law judge recognized that the jobs identified by the vocational expert as listed in the Dictionary of Occupational Titles did not allow for an hourly sit or stand option.  Under SSR 00-4p, an administrative law judge has an affirmative responsibility to ask whether a vocational expert's evidence conflicts with information provided in the Dictionary before relying on that evidence to support a determination of nondisability.  Overman v. Astrue, ___ F.3d ___, 2008 WL 4472095, *5 (7th Cir. Oct. 7, 2008); Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006).  Here, the administrative law judge recognized a conflict and made the required inquiry about the basis of the expert's testimony.  He asked the vocational expert whether he was familiar with how the jobs were performed in Wisconsin and whether based on his personal knowledge, they could be performed with an hourly sit or stand option.  The expert responded yes to both questions.  Although plaintiff's representative had the opportunity to challenge this testimony, he did not do so.  An administrative law judge may accept vocational expert testimony that conflicts with the Dictionary when, as in this case, the expert's experience and knowledge exceeds that of the Dictionary's authors.  Overman, 2008 WL 4472095, *7 (citing Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002)).  Thus, even if plaintiff had not waived her argument, I am satisfied that the administrative

law judge met his responsibility under SSR 00-4p and that he properly relied on the vocational expert's testimony.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Kimberly R. Wright's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 27th day of October, 2008.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

40